IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| **KAREN PARKER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 9:21-CV-279-MAC** |
| | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY,** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

The Plaintiff, Karen Parker ("Parker"), requests judicial review of a final decision of the

Commissioner of Social Security Administration with respect to Parker's application for disability-

based benefits. This action is before the undersigned magistrate judge for review, hearing if

necessary, and submission of a report with recommended findings of fact and conclusions of law.[1]

The undersigned finds that the administrative law judge's decision lacks reversible error and is

supported by substantial evidence, and therefore recommends affirming the decision denying

benefits.

## I.   JUDICIAL REVIEW

United States district courts may review decisions of the Commissioner of the Social

Security Administration. 42 U.S.C. § 405(g) (2020). The scope of judicial review is limited,

however, to determining whether (a) the Commissioner applied proper legal standards and (b) the

decision is supported by substantial evidence. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir.

---

[1] General Order 05-06 refers civil proceedings involving appeals from decisions of the Commissioner of Social Security Administration to magistrate judges serving the divisions where the cases are filed. *See also* 28 U.S.C. § 636(b)(1)(B) (2009) and E.D. TEX. CIV. R. CV-72 for the Assignment of Duties to United States Magistrate Judges.

1995); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).   When the Commissioner applies proper law and the decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also* 42 U.S.C. § 405(g).

Reviewing courts, therefore, give the Commissioner's decisions great deference.   *Leggett,* 67 F.3d at 564.   Courts may not re-weigh evidence, try issues *de novo*, or substitute their judgments for those of the Commissioner.   *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance.   *Elfer v. Texas Workforce Comm'n*, 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary").   Rather, it is for the Commissioner to weigh evidence and resolve conflicts.   *See Anthony*, 954 F.2d at 295; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

When the Commissioner fails to apply correct principles of law, or when "substantial evidence"[2] does not support the Commissioner's decision, the governing statute authorizes a reviewing court to enter, upon the pleadings and the transcript of the record, a judgment modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.   *See* 42 U.S.C. § 405(g).   Thus, courts have the power to remand for further administrative proceedings, or they may direct the Commissioner to award benefits without a rehearing.   Ordinarily, courts remand for further administrative proceedings to address and cure

---

[2]   "Substantial evidence" is a term of art meaning "more than a mere scintilla."   *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Anthony v. Sullivan*, 954 F.2d at 292.   Evidence is "substantial" when it is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.   *Biestek,* 139 S. Ct. at 1154*; Richardson v. Perales*, 402 U.S. at 401; *Marcello v. Bowen*, 803 F.2d 851, 853 (5th Cir. 1986).

deficiencies.   *See, e.g., Newton v. Apfel*, 209 F.3d 448, 460 (5th Cir. 2000).

## II.   BACKGROUND

### A.   Procedural History

Parker applied for disability insurance benefits on September 14, 2020, due to impairments

that allegedly became disabling on February 20, 2020.   (Tr. 10, 153-159.)   Following the denial

of her claim, she requested a hearing before an administrative law judge which was held on June

11, 2021.   (Tr. 26-50.)   Teresa Rogers, a vocational expert, testified at the hearing.   (*Id.*)

On July 7, 2021, Administrative Law Judge Kimani R. Eason (ALJ Eason) issued a

decision denying Parker's application.   (Tr. 10-21.)   Parker requested review of the ALJ's

decision by the Appeals Council, which was denied on September 7, 2021, thereby prompting this

appeal.   (Tr. 1.)

### B.   Factual History

Parker was 47 years old at the alleged onset date of disability, with a high school education

and past work experience as a licensed vocational nurse, general duty registered nurse, and   staff

registered nurse.   (Tr. 19.)   Parker's application was denied at the initial and reconsideration

levels.

### C.   Administrative Decision and Appeal

ALJ Eason utilized the five-step sequential analysis model specified by regulations and

approved by courts in reaching his decision denying Parker's application.[3]   At step one, ALJ

---

[3]  Pursuant to 20 C.F.R. § 404.1520(a)-(f), the five steps are generally as follows:
   1.  The Commissioner ascertains *whether an applicant currently engages in substantial gainful activity*.
   (If so, a finding of non-disability is entered, and the inquiry ends.)
   2.  The Commissioner determines *whether an applicant has a severe impairment or combination of
   impairments.*   (If not, the inquiry ends, and a finding of non-disability is entered.)
   3. The Commissioner determines *whether any severe impairment(s) equals or exceeds those in a Listing of
   Impairments, 20 C.F.R. Subpt. P, Appendix 1* ("the Listings").   (If so, disability is presumed, and benefits
   are awarded.   If not, the analysis continues.)
   4.  The Commissioner determines *whether any impairment(s) prevents the claimant from engaging in*

Eason found that Parker has not engaged in substantial gainful activity since February 20, 2020,

the alleged onset date.  (Tr. 12.)   At steps two and three, he found that Parker has the following

severe impairments: bipolar disorder, posttraumatic stress disorder (PTSD), generalized anxiety

disorder, type II diabetes mellitus with hyperglycemia and neuropathy, obesity, and disorder of the

cervical spine.  (Tr. 13.)   However, these impairments did not meet or medically qualify under

the criteria of any listed impairment in the regulations at 20 C.F.R. pt. 404, subpt. P, app 1 (Listed

Impairments) for presumptive disability.   (Tr. 13-16.)   ALJ Eason determined that Parker

retained the residual functional capacity (RFC) to perform a limited range of light work with the

following limitations: frequently balance; occasionally climb ramps and stairs; never climb

ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, and crawl; occasionally push, pull,

handle and finger objects with the non-dominant left hand; never work at unprotected heights or

around dangerous machinery; never operate heavy equipment or drive a motor vehicle; avoid all

exposure to open flames and open bodies of water; can understand, remember and carry out simple

instructions in a work environment free of fast paced task requirements or strict production quotas;

make simple work related decisions and adapt to and manage simple, routine changes occurring

no more than frequently in the work setting; occasional interaction with supervisors and

coworkers; and only brief and superficial interaction with the general public.   (Tr. 16-19.)

ALJ Eason found Parker was not able to perform past relevant work as a nurse at step four.

(Tr. 19.)   However, at step five, ALJ Eason, relying on vocational expert testimony, found that

Parker was not disabled because she was able to perform other work that existed in significant

---

*regular previous employment*.   (If so, a *prima facie* case of disability is established and the burden of going
forward (to the fifth step) shifts to the Commissioner.  *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th
Cir. 1987)).

5.  The Commissioner determines *whether other work exists in the national economy which the applicant
can perform*.  (If so, the burden shifts back to the applicant to show he cannot perform the alternative
labor.  *See id.*; *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986)).

numbers in the national economy, such as marker, garment sorter, and sorter.   (Tr. 20-21.)

### III.   POINTS OF ERROR

Parker alleges that ALJ Eason erred by applying an incorrect standard to evaluate her symptoms, particularly the pain she suffers as a result of her impairments.   (Doc. #21.)   She also states that ALJ Eason failed to develop the facts fully when he did not re-contact Dr. John Nielsen to clarify whether his opinion was based upon Parker's subjective complaints versus his observations.   (*Id.*)

In response, the Defendant asserts that ALJ Eason did a proper subjective symptom analysis pursuant to social security regulation 16-3p, and that any error in failing to re-contact Dr. Nielsen is harmless because the RFC is supported by substantial evidence.   (Doc. #22.)

### IV.   DISCUSSION AND ANALYSIS

A. Consideration of Parker's Subjective Symptoms

Social Security Ruling 16-3p explains that "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability."   S.S.R. 16-3p, 2016 WL 1020935, at *1-2 (Oct. 25, 2017).[4]   The ALJ, however, cannot ignore statements of symptoms but, rather, must evaluate them according to the two-step process set forth in this regulation: (1) consideration of "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain;" and (2) evaluation of "the intensity and persistence of the symptoms to determine

---

[4] The Social Security Administration issued Social Security Ruling 16-3p, which eliminated the "use of the term 'credibility' from [its] sub-regulatory policy," clarifying "that subjective symptom evaluation is not an examination of an individual's character."   SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). It instructs ALJs to determine "the extent to which ... symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the [claimant's] record" and simply shifts the focus from a more general analysis of a claimant's truthfulness to an objective comparison of a claimant's statements to the evidence of record. *See Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *6 (N.D. Tex. Feb. 10, 2017).   While SSR 16-3p explicitly supersedes SSR 96-7P, "it is evident that the change brought about by SSR 16-3p was mostly semantic."   *Id.* at *7 (collecting cases).

the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* at *2-4.   The ALJ must evaluate the symptoms experienced by the claimant by looking to the objective medical evidence, the claimant's statements, medical sources, other sources, and several other factors, including daily activities, aggravating symptoms, pain characteristics, treatment, medication, etc.   *Id.* at *3-6.   In performing this evaluation, the ALJ is not, however, required to articulate expressly every regulatory factor or reason in making this determination.   S*ee Undheim v. Barnhart*, 214 F. App'x 448, 451 (5th Cir. 2007).   Furthermore, the court must give deference to the ALJ's evaluation of the plaintiff's subjective complaints if it is supported by substantial evidence.  *See Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990).

Parker alleges that her case is analogous to the *Scharlow* case.   In that case, the claimant alleged disability due to pain and argued error by the ALJ in failing to make a specific finding regarding her allegations of pain.   *Scharlow v. Schweiker*, 655 F.2d 645, 648-649 (5th Cir. 1981). The court agreed and found that the ALJ failed to indicate the basis for his credibility choices in resolving the truthfulness of her subjective complaints thus requiring remand.   *Id.*   The undersigned finds this case inapplicable.   ALJ Eason specifically addressed Parker's allegations of pain and why he discounted them in his decision.   (Tr. 18-19.)

ALJ Eason stated in his decision that he considered the evidence in accordance with Social Security Regulation 16-3p, but found that Parker's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the evidence of record and do not support a finding of disability.   (Tr. 17-19.)   In reaching this conclusion, he discussed her testimony that she can only stand for 15 minutes, must recline when sitting, falls frequently, cannot button clothes, has difficulty lifting, and does not like to leave her house.   (Tr. 18.)   He also noted, however, that Parker's function report (filled out by Parker on October 27, 2020) stated that she

can prepare simple meals, shop in stores, pay bills, read, watch tv, play cards, visit with family, complete tasks, follow instruction, finish what she starts, and does not require an assistive device to ambulate.  (Tr. 18.)  The report also shows that she does some laundry and sweeping.  (Tr. 194-201.)  Her medical records dated two months prior on August 15, 2020, also indicate that she has ridden on the back of a motorcycle with her husband.  (Tr. 267.)  ALJ Eason stated that "the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.  Overall, the description of symptoms and limitations which the claimant provided throughout the record has generally been inconsistent and unpersuasive."  (Tr. 18); *see Reyes v. Sullivan*, 915 F.2d 151. 155 (5th Cir. 1990) (finding that inconsistencies between claimant's testimony about his limitations and his daily activities "were quite relevant in evaluating his credibility").  Further, he cited to Parker's treatment records showing normal exam results and essentially normal x-rays showing only some degenerative changes.  (Tr. 17.)

The original state agency medical examining doctors, Drs. Mark Scade, Ph.D. and Leigh McCary, M.D., found that Parker could do medium exertional work and she had no severe mental impairments.  (Tr. 19.)  ALJ Eason found these opinions less persuasive because they did not adequately consider Parker's subjective complaints.  (*Id.*)  The state agency medical examiners, Drs. Michael Cremerius and Kavitha Reddy, reconsidered Parker's case and found that Parker had severe mental impairments and could only perform less than the full range of light work.  (*Id.*)  ALJ Eason found these opinions persuasive and more consistent with the record and supported by the medical evidence.  (*Id.*)  He noted that no treating or examining physician has indicated that Parker's symptoms are overwhelming enough to be sufficient for disability status. (*Id.*)  In fact, Parker's regular treating acute care nurse practitioner, Laura Briggs, stated in her records on June

5, 2019, that Parker was "exhibiting behaviors of a malingerer." (Tr. 580.) She noted that Parker presented her with disability papers because "she said they want her to sit through Texas Workforce classes" but she "explained to patient that she is not going to be able to return to the workforce in her previous position but there is no reason that she shouldn't be able to sit through classes to find a job position that she could perform." (*Id.*) NP Briggs stated that Parker then stated her excuse was her husband's work schedule. (*Id.*) Her medical notes also show that Parker admitted that she was fired from her job right before she was going to be able to go back in a part-time capacity. (Tr. 593.)

Parker's medical records also indicate that she falls frequently and goes to the hospital seeking pain medications. (Tr. 251, 258, 267, 564, 602, 647, 667, 835, 838.) On October 2, 2019, Parker reported to NP Briggs that she fell several times and went to the hospital that day, and NP Briggs noted that her "speech slurred as if patient under the influence of substance/medication." (Tr. 563-564.) Her emergency visit at the hospital on that same date indicated that she complained of chronic pain (with no mention of a fall) and demanded Morphine and Dilaudid, which was denied since the Texas Prescription Monitoring Program showed that she received hydrocodone from her provider the previous day. (Tr. 843.) The hospital provider stated that she was obviously already under the influence and reported pain ten out of ten but was napping during her stay. (Tr. 842.) The notes mention that Parker was hostile, combative, appeared unkempt, had slurred speech, showed no trauma, and left the hospital angry and against medical advice. (Tr. 843.)

Consequently, considering the totality of the evidence, ALJ Eason found that Parker has not demonstrated that she is incapable of working at a modified light level that accommodates her functional limitations. The totality of Parker's record reflect that ALJ Eason's analysis of

8

Parker's symptoms are supported by substantial evidence, he properly evaluated Parker's alleged symptoms, and he accepted the symptom reports to the degree to which they were consistent with the objective medical evidence and other evidence of record.   As noted above, where substantial evidence supports the ALJ's decision, the court should give it deference.   Consequently, ALJ Eason did not err on this point.

B. Duty to Develop the Record

"The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts."   *Brock v. Chater,* 84 F.3d 726, 728 (5th Cir. 1996).   Developing the record may include ordering a consultative exam.   *Pearson v. Bowen,* 866 F.2d 809, 812 (5th Cir.1989); 20 C.F.R. §§ 404.1512, 416.912.   A consultative exam may be required "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the agency] to make a determination or decision on [a] claim."   20 C.F.R. § 404.1519a(b).   In this case, Dr. John Nielsen, M.D. performed a consultative exam on Parker.

Parker alleges that ALJ Eason discounted Dr. Nielson's findings because he was unclear on the basis of those findings, and he erred in his duty to develop the record by not re-contacting Dr. Nielson to clarify those findings.   The regulations regarding consultative examination reports state that "[i]f the report is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report."   20 C.F.R. § 404.1519p.   An error in failing to re-contact an examiner only requires remand if prejudice is shown.   *See Acevedo v. Kijakazi*, No. 1:22-CV-00058, 2023 WL 3848388, at *3 (S.D. Tex. June 6, 2023).

In *Acevedo*, the consultative examiner report did not provide a functional assessment and the plaintiff alleged error in the ALJ not recontacting the examiner.  *Id.* at *2.  The plaintiff also argued that the ALJ erred by failing to recontact the examiner for clarification because it left the ALJ with only a non-examining, non-treating state agency consultant to determine Plaintiff's RFC.  *Id.* at *3.  The court denied remand finding the RFC well-supported and no prejudice where the plaintiff failed to show how recontacting the consultative examiner would have overcome the substantial medical evidence in the record and altered the ALJ's decision.  *Id.*

In this case, Parker stopped working after a motor vehicle accident on May 19, 2018, wherein she had a shattered pelvis, dislocated hip, head injury, and broken left wrist.  (Tr. 34-39.)  Dr. Nielson did a consultative physical examination on Parker on July 22, 2019—more than 6 months prior to her alleged onset date of February 20, 2020.[5]  (Tr. 153, 628.)  He assessed her complaints of a herniated disc, fibromyalgia, chronic pain, and left-hand pain.  (*Id.*)  In the "history" portion of his report, he states that "she can stand for 10 minutes.  She can walk within her house for exercise.  She can lift 10 pounds.  She can sit for 15 minutes. . . . She can't squat and has difficulty bending at the waist.  She is not driving."  (Tr. 628.)  The "examination" section of his report states that she has painful range of motion in her left shoulder; decreased range of motion, flexion, and extension in her left wrist; decreased range of motion and grip in her left hand; limping in her gait; tender, painful spine with decreased range of motion; weak muscles and tone in spine; straight leg diagnostic test positive; and reflexes weak.  (Tr. 630-631.)  His "assessment" included: low back pain, pain in left hand, and fibromyalgia.  (Tr. 631.)  His "plan" states that she "can stand for 10 minutes, sit for 15 minutes and walk within her house with the pain.  She can lift 10 pounds with the right hand.  She has difficulty bending at the waist, doing

---

[5] Parker's counsel asserted at the administrative hearing that her later onset date of February 20, 2020, was because she was optimistic about returning to work after the accident.  (Tr. 41-42.)

more than one load of laundry at a time and squatting. She can't sweep or mop. She is not driving since 2018." (Tr. 632.) He also noted in this section that during her exam, she was slow going from sitting to standing and had severe pain with flexion of the lumbar spine to 30 degrees. (*Id.*) He reiterated her other exam results as well and stated that her medications for pain make her drowsy and less alert. (*Id.*) Dr. Nielson also found that her left-hand grip was a 2 out of 5 giving her difficulty in gripping small objects and opening jars or doors as exhibited in his office. (*Id.*)

ALJ Eason discussed Dr. Nielson's exam results and his opinion but found it "unpersuasive because it is not clear if the opinion is based on the self-reports of the claimant and the opinion is not supported by subsequent physical findings." (Tr. 17.) The undersigned finds the first part of his reasoning disingenuous. Her diagnosis is "pain" of certain areas, which necessitates subjective complaints from the patient in making an assessment. *See* SSR 96-8P, 1996 WL 374184, at *5 (July 2, 1996) ("Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone."). From there, an examination is done testing the patient's range of motion, reflexes, etc. as was done by Dr. Nielson. It appears from Dr. Nielson's report that he took Parker's self-reports as well as his exam findings into account when making his assessment and plan for her impairments. ALJ Eason seems to question the functional limitations given because they are the same as the ones mentioned in the "history" section of his report, which were presumably provided by Parker. As noted in the previous section, ALJ Eason did not find Parker's statements concerning the effects of her symptoms entirely consistent with the evidence.

In any event, ALJ Eason also stated that he found Dr. Nielsen's opinions unpersuasive

because they were not supported by subsequent physical findings, including x-rays of her hand, hip, spine, and multiple normal physical examinations.   SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) ("We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record.").   SSR 16-3p provides that reduced range of motion "may be less supportive of an individual's statements about pain" "when the results of tests are not consistent with other evidence in the record." *Id.*   ALJ Eason followed 16-3p by articulating why Dr. Nielsen's exam results were inconsistent with other evidence in the record and thus less supportive.   (Tr. 17.)

Specifically, ALJ Eason relied on Dr. Kavitha Reddy's, a non-examining state agency doctor, opinions as to Parker's functional limitations in making his RFC assessment.   Dr. Reddy evaluated Parker's medical records (including Dr. Nielson's 2018 report) on January 19, 2021, and found that Parker had the RFC to perform light work[6] with the following limitations: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk 6 hours in an 8-hour day; sit 6 hours in an 8-hour day; unlimited push and/or pull; occasionally climbing ramps/stairs; never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; unlimited reaching, handling, and feeling; and limited left fingering. (Tr. 76-80.)   ALJ Eason found this opinion persuasive but added further manipulative and environmental limitations into his RFC findings.   The imaging studies, the actual physical examinations versus telemedicine visits, and Parker's function reports describing her daily activities support ALJ Eason's decision to favor the opinion of Dr. Reddy over those of the consultative examiner.   *See Willis v. Kijakazi*, No. 3:20-CV-00317-RHWR, 2021 WL 9667782,

---

[6] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   20 C.F.R. § 404.1567.

at *5–6 (S.D. Miss. Nov. 1, 2021).   It was within ALJ Eason's discretion to determine the credibility of the various medical reports in the record.   *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991).

The undersigned further finds that Parker has not shown prejudice in failing to re-contact Dr. Nielson.   "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision."   *Ripley,* 67 F.3d at 558, n.22.   Considering the subjective nature of Parker's impairments and the exam of such, re-contacting the consultative examiner would not have led ALJ Eason to a different decision.   *See Danzy v. Comm'r of Soc. Sec.*, No. SA-21-CV-00350-XR, 2022 WL 2063730, at *5 (W.D. Tex. June 8, 2022) (finding a consultative examination impractical considering the subjective nature of the claimant's symptoms primarily stemming from pain).   Moreover, regardless of the self-reports of pain, ALJ Eason discounted Dr. Nielsen's opinions for lack of supportability in the record as discussed above.   There is no prejudicial error on this point.

## V. RECOMMENDATION

ALJ Eason's application of the sequential analysis is free from legal error and supported by substantial evidence for the reasons discussed in the preceding sections.   Consequently, the administrative decision should be affirmed.

## VI. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation.   Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report.   *See* 28

U.S.C. § 636(b)(1)(c) (2009); FED. R. CIV. P. 72(b)(2).  A party who objects to this report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1) (2009); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

**SIGNED this the 15th day of August, 2023.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE